UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


U.S. Bank National Association

  v.                                    Civil No. 13-cv-294-PB
                                        Opinion No. 2015 DNH 061
Harry John Bickford, et al.


MEMORANDUM AND ORDER


    This case concerns a mortgage that ambiguously describes the mortgaged property by including a street address and tax map number for one parcel but a deed reference for a different parcel held by the same owner.  After the mortgagor defaulted, U.S. Bank foreclosed the mortgage and then purchased the property that the mortgage identified by street address and tax map number at the foreclosure sale.  The issue I must resolve is whether the ambiguous description of the property in the mortgage leaves U.S. Bank's title subject to federal tax liens that accrued after the mortgage was recorded.


I.  BACKGROUND

    Harry Bickford owned property located at 9 Elm Street in Winchester, New Hampshire.  He acquired title through two

separate deeds, the first in 1982 and the second in 1987.  The first deed is recorded with the Cheshire County Registry of Deeds at Book 1025, Page 605, and the second is recorded at Book 1180, Page 107.  Both deeds provide a detailed metes-and-bounds description of the property.  In 2003, Bickford also acquired title to 19 Elm Street, a separate property that is located across the street from 9 Elm Street.  The deed for 19 Elm Street is recorded at Book 2005, Page 704.

Bickford granted a mortgage (the "Bickford mortgage") to Aegis Funding Corporation in 2003, which then recorded the mortgage in the same year.  As recorded, the mortgage provides the following information regarding the "described property": "SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF." Doc. No. 29-3 at 10.  Immediately thereafter, the mortgage identifies the location of the property as "9 ELM STREET, WINCHESTER, NEW HAMPSHIRE 03470."  Id.  The attached legal description lists the address of the mortgaged property as 9 Elm Street and provides the correct tax map number for that parcel. In what appears to be a mistake, however, the legal description also provides a book and page reference for the deed to 19 Elm Street.

Aegis assigned its mortgage to U.S. Bank in 2011.  After Bickford defaulted, U.S. Bank conducted a foreclosure sale on 9 Elm Street, at which it purchased the property itself.  U.S. Bank recorded its foreclosure deed to 9 Elm Street in January 2012.

In the meantime, the Internal Revenue Service ("IRS") made the following assessments against Bickford for unpaid taxes:

| Taxable Year | Amount | Date Assessed | Date Recorded |
|---|---|---|---|
| 2000 | $9,184.49 (plus $34.00 in collection fees) | **10/24/2005** ($34.00 in collection fees assessed on 2/13/2006) | 1/24/2006 |
| 2002 | $22,483.50 (plus $336.24 failure to pay penalty) | **6/14/2004** ($336.24 failure to pay penalty assessed on 10/29/2007) | 3/18/2014; refiled on 5/7/2014 |
| 2003 | $44,295.28 (plus $2,327.65 in interest) | **7/9/2007** ($2,327.65 in interest assessed on 7/29/2013) | 10/14/2008 |

Doc. No. 29-1 at 4.

U.S. Bank filed a complaint against Bickford and the IRS in state court seeking to reform the mortgage and foreclosure deed. It also sought a declaratory judgment that the tax liens are subordinate to the mortgage and foreclosure deed.  The IRS

3

removed the complaint to this Court, and the parties subsequently filed cross motions for summary judgment.  Neither side argues that material facts remain in genuine dispute.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder of fact, under the

appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.   **ANALYSIS**

Under federal law, a foreclosure sale of property encumbered by a federal tax lien "shall have the same effect" on a federal tax lien "as may be provided with respect to such matters by the local law of the place where such property is situated."[1] 26 U.S.C. § 7425(b)(2).  New Hampshire law, in turn, provides that the recording of a valid foreclosure deed extinguishes junior interests but leaves senior interests intact.  See N.H. Rev. Stat. Ann. § 479:26, III.  Whether U.S. Bank's title to 9 Elm Street is now subject to the tax liens,

---

[1] The statute provides, in relevant part: "[A] sale of property on which the United States has or claims a lien . . . made pursuant to an instrument creating a lien on such property . . . shall have the same effect with respect to the discharge or divestment of such lien . . . of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if . . . notice of such sale is given in the manner prescribed in subsection (c)(1)." 26 U.S.C. § 7425(b).  The IRS acknowledges that U.S. Bank provided notice of the November 2011 foreclosure sale as required by § 7425(c)(1) before the sale took place.

therefore, turns on whether the ambiguous property description in the Bickford mortgage prevented the mortgage from holding priority over the tax liens when U.S. Bank recorded its foreclosure deed in January 2012.

"[I]t is well-settled that federal law determines the priority of competing federal and state created liens." Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1234 (1st Cir. 1996). Ordinarily, the federal common law rule of "first in time, first in right" governs priority contests between federal tax liens and state liens like the Bickford mortgage. United States v. McDermott, 507 U.S. 447, 449 (1993). Under this rule, a state lien primes a federal tax lien only if the state lien becomes choate in the federal sense before the tax lien accrues.[2] Id. To determine whether the

---

[2] Under the common law "first in time" rule, a federal tax lien ordinarily attaches upon assessment, and the IRS need not record the tax lien to prevail over a subsequent state lien. In re Restivo Auto Body, Inc., 772 F.3d 168, 172-73 (4th Cir. 2014). 26 U.S.C. § 6323(a) modifies the common law rule to require the IRS to record its lien to claim priority over the holder of a "security interest, mechanics lienor, or judgment lien creditor." See 26 U.S.C. § 6323(a). The government rejects this interpretation of § 6323(a) and instead argues that the statute supplants the common law rule except in a narrow class of cases not relevant here. It then argues that because a mortgage is, broadly speaking, a kind of security interest, a mortgage must meet the statutory definition of a "security

Bickford mortgage held priority over the tax liens when U.S. Bank recorded its foreclosure deed in January 2012, therefore, I must determine whether the mortgage became choate before the tax lien accrued.

The choateness of a state lien is a question of federal law. United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 88-89 (1963). As articulated by the Supreme Court, the test of choateness is whether the state lien is "perfected in the sense

---

interest" in § 6323(h)(1) to prime a recorded tax lien. See 26 U.S.C. § 6323(h)(1). Because the Bickford mortgage does not meet that statutory definition, the government contends, it cannot prevail over the federal tax liens. I am unpersuaded by this argument because it both misreads the text of § 6323(a) and obscures the statute's purpose, which is to protect the specific lienholders identified by the statute from the harsh effects of the common law "secret lien," not to entirely preclude holders of state liens that do not meet any of the statutory definitions in § 6323(h) from claiming priority over a recorded tax lien. See United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 89 (1963) (noting that original purpose of § 6323 was to protect certain lienholders from harshness of secret tax lien created by common law rule); see also United States v. Cent. Bank of Denver, 843 F.2d 1300, 1306-07 (10th Cir. 1988) (holding that § 6323 modifies, but does not supplant, federal choateness doctrine); J.D. Court, Inc. v. United States, 712 F.2d 258, 263 (7th Cir. 1983) (same); Texas Oil & Gas Corp. v. United States, 466 F.2d 1040, 1052-53 (5th Cir. 1972) (same). As will become apparent in this Order, however, my disagreement with the government does not affect the outcome of this case because the Bickford mortgage fails to prime the tax liens under the common law rule for the same reason that it does not meet the statutory definition of a "security interest" under § 6323(h)(1).

that there is nothing more to be done to have a choate lien —
when the identity of the lienor, the property subject to the
lien, and the amount of the lien are established." United
States v. New Britain, 347 U.S. 81, 84 (1954); see also
McDermott, 507 U.S. at 449.  In some cases, state law can
provide a useful starting point in determining whether a state-
created property interest is choate for purposes of federal law.
United States v. Sec. Trust & Sav. Bank, 340 U.S. 47, 49-50
(1950).  Although state law will not always necessarily resolve
the question, a state lien that remains unperfected under state
law will virtually never qualify as choate under the federal
standard.  See id. at 50 ("[I]f the state court itself describes
the lien as inchoate, this classification is practically
conclusive.") (internal quotation omitted).

U.S. Bank offers two arguments to support its contention
that the Bickford mortgage was already choate in the federal
sense when the IRS assessed the tax liens.  First, it argues
that the mortgage became choate as soon as it was recorded in
2003 because it provided a sufficiently clear description of the
mortgaged property to place subsequent lienholders on
constructive notice, which is all that New Hampshire law

8

requires to perfect a mortgage.  Alternatively, it argues that
New Hampshire law allows this Court to equitably reform the
mortgage and retroactively render it choate as of the original
2003 recording date.  For the reasons I explain below, neither
argument is persuasive.

A.   **Sufficiency of the Original Mortgage**

"For purposes of perfecting liens and interests in real
estate, New Hampshire is a race-notice jurisdiction." In re
Chase, 388 B.R. 462, 467 (Bankr. D.N.H. 2008) (internal
quotation omitted).  Therefore, as in other race-notice
jurisdictions, "a purchaser or creditor has the senior claim if
he or she records without notice of a prior unrecorded
interest." Amoskeag Bank v. Chagnon, 133 N.H. 11, 14 (1990).
The type of notice that a recording must provide to prime a
subsequent property interest, however, varies depending on the
subsequent interest's type.  A prior interest need only provide
inquiry notice to prime a subsequent purchaser or mortgagee.
C F Invs., Inc. v. Option One Mortg. Corp., 163 N.H. 313, 317
(2012).  Thus, "subsequent purchasers and mortgagees are
obligated to fully investigate any apparent discrepancies [in
the recording] to determine whether title to the desired parcel

9

is encumbered in any way." Id.  In contrast, a recording must
provide constructive notice to all other attaching creditors.
Amoskeag Bank, 133 N.H. at 15.  That is, attaching creditors
"may simply rely on the record" to determine whether other
interests already encumber the property in question.  Id.
Unlike purchasers and mortgagees, the race-notice rule does not
require them to investigate discrepancies in a recording beyond
the record itself.  See id.  Acknowledging this distinction,
U.S. Bank argues that the 2003 recording of the Bickford
mortgage provided a sufficiently clear description of the
property to satisfy the constructive notice standard and thereby
perfect the mortgage under New Hampshire law.

    Constructive notice simply means record notice.  See
General Motors Acceptance Corp. v. Brackett & Shaw Co., 84 N.H.
348, 150 A. 739, 741 (1930).  A recording of a property interest
provides constructive notice "of no other facts than those that
appear upon the record."  Id. (internal quotation omitted).  A
properly recorded mortgage automatically places all future
creditors and purchasers on constructive notice of the mortgage
and thereby primes subsequent interests in the mortgaged
property under the race-notice rule, but a defectively recorded

mortgage does not.  See Amoskeag, 133 N.H. at 14.

New Hampshire law provides no precise and uniform standard that separates properly recorded mortgages, which provide constructive notice, from defective mortgages, which do not. Section 477:3-a of the New Hampshire Revised Statutes requires "[e]very . . . instrument which affects title to any interest in real estate . . . [to] be recorded at length in the registry of deeds for the county or counties in which the real estate lies." N.H. Rev. Stat. Ann. § 477:3-a.  Furthermore, Section 477:7 of the New Hampshire Revised Statutes provides that "[n]o deed of . . . mortgage . . . shall be valid to hold the same against any person but the grantor and his heirs only, unless such deed . . . be acknowledged and recorded." N.H. Rev. Stat. Ann. § 477:7. But beyond this clear statutory imperative to record, neither the New Hampshire legislature nor the New Hampshire Supreme Court have prescribed precise "minimum land description standards [that a sufficient recording must satisfy], other than certain requirements to aid the recording officials." Smith v. Wedgewood Builders Corp., 134 N.H. 125, 129 (1991).[3]

---

[3] These requirements are primarily administrative and appear in Section 478:4-a of the New Hampshire Revised Statutes.  See N.H. Rev. Stat. Ann. § 478:4-a.

Nevertheless, the New Hampshire Supreme Court has explained that "[t]he purpose of . . . the recording statutes . . . is to provide notice to the public of a conveyance of or encumbrance on real estate.  The statutes serve to protect both those who already have interests in land and those who would like to acquire such interests." Amoskeag Bank, 133 N.H. at 14 (emphasis added).  To that end, the court has employed a "plain and simple" test to determine whether a recording describes the underlying property interest with enough detail to provide notice of the interest to the public: "whether the record, if examined and read, would be an actual notice of the original [interest] and of all its parts and provisions." General Motors, 150 A. at 741 (emphasis in original).  The central question, in other words, is whether "the property [encumbered] can be reasonably determined from the description" furnished by a recording. Smith, 134 N.H. at 129; see Charles Szypszak, 17 New Hampshire Practice: Real Estate § 6.03 (1st ed. 2003) (whether a recording containing a mistake nonetheless provides constructive notice "depends on whether the mistake is such that the recorded instrument cannot reasonably be considered to have informed potential purchasers and creditors of the interest that

was transferred"); cf. Alex Builders & Sons, Inc. v. Danley, 161
N.H. 19, 25 (2010) (a recording of a mechanic's lien against a
property need not "contain a book and page reference" to a
particular deed; instead, "only a reasonably accurate
description of the property, so that the attached real estate
may be identified with reasonable certainty," is required)
(internal quotation omitted).

   As recorded, the Bickford mortgage provides a street
address for the attached property and includes a legal
description that provides both a street address and tax map
number suggesting that the mortgage encumbers 9 Elm Street.  On
the other hand, the legal description also states that the
encumbered property is "more fully described in a [separate]
deed" that the description identifies by volume and page number
in the Cheshire County Registry of Deeds.  Doc. No. 29-3 at 12.
That deed, however, references not the 9 Elm Street property,
but 19 Elm Street, a different property also owned by Bickford
and located across the street from 9 Elm Street.

   It is true that a recording is sufficient, and therefore
provides constructive notice, if it is "substantially even if
not absolutely correct." General Motors, 150 A. at 741. And,

13

again, New Hampshire law does not prescribe one uniform, precise manner in which a recording must describe the underlying property to provide constructive notice. Smith, 134 N.H. at 129. Thus, in In re Prescott, the bankruptcy court for this District found a property description that correctly identified the encumbered property by lot number, but also included a metes-and-bounds description that covered only part of the encumbered property, sufficient to provide constructive notice. 402 B.R. 494, 499-500 (Bankr. D.N.H. 2009). Similarly, in Alex Builders & Sons, Inc. v. Danley, in the context of mechanic's liens, the New Hampshire Supreme Court held that a lien providing only an overbroad description of the encumbered property by street address and tax map number was valid.[4] 161 N.H. 19, 25, 27 (2010).

New Hampshire law, therefore, tolerates some ambiguity, and even some error, in a recording's property description so long as the recording allows the encumbered property to be reasonably determined. See General Motors, 150 A. at 741; Szypszak, supra,

---

[4] Whether the court would extend this holding to mortgages is unclear. As I explain in this Order, however, the Bickford mortgage fails to provide constructive notice even under the relatively lenient standard that Alex Builders & Sons prescribes for mechanic's liens.

at § 6.03.  The Bickford mortgage, however, does not meet this standard because, unlike the errors in the instruments under dispute in Prescott and Alex Builders & Sons, the incorrect deed reference precludes any identification of the encumbered property from the recording itself.  See Prescott, 402 B.R. at 499-500; Alex Builders & Sons, 161 N.H. at 25, 27.  Although the recording includes a street address and tax map number for the encumbered property, it also references a deed for an entirely different property.  Thus, different portions of the recording refer to different properties.  It is impossible to discern from the recording itself which portion – the street address and tax map number, or the deed identified by volume and page number – is correct and which is erroneous.  Consequently, it is impossible to determine from the recording itself whether the mortgage encumbers 9 Elm Street or 19 Elm Street.

The Bickford mortgage may well have provided enough information to prompt a reasonable purchaser or mortgagee to conduct further investigation, but that possibility is insufficient to establish constructive notice.  See Amoskeag Bank, 133 N.H. at 15.  A recording provides constructive notice only of the facts that it contains, and the facts contained by

the Bickford mortgage conflict with themselves in a manner that is impossible to resolve on the face of the recording alone. See General Motors, 150 A. at 741. The 2003 recording of the Bickford mortgage, therefore, did not provide constructive notice under New Hampshire law of the encumbrance on 9 Elm Street.[5] Consequently, the Bickford mortgage remained inchoate for federal purposes after the recording was made. See Sec. Trust, 340 U.S. at 50.

**B.  Equitable Reformation and Relation Back**

U.S. Bank claims in the alternative that the incorrect deed reference was included in the legal description by mutual mistake of the parties to the mortgage. Therefore, it argues that New Hampshire law permits a court to reform the mortgage in

---

[5] As I have discussed, the common law choateness doctrine controls the priority analysis in this case, not § 6323(a). But even if § 6323(a) did control, the Bickford mortgage would nevertheless fail to qualify as a "security interest" as defined by § 6323(h)(1). Under that definition, a state lien qualifies as a "security interest" only if "the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1). The government correctly argues that the Bickford mortgage does not satisfy this definition because, as I have explained, the Bickford mortgage does not contain a sufficiently clear description of the covered property to provide constructive notice and thereby prime subsequent lien creditors under New Hampshire law. Thus, I would reach the same result in this case even if § 6323(a) supplanted, rather than modified, the common law choateness doctrine.

equity to correct the mistaken deed reference.  Following the mortgage's equitable reformation, U.S. Bank contends, New Hampshire law would consider the mortgage to have been perfected in 2003 – the date of the original, defective recording – and not on the date of the subsequent reformation.  For that reason, U.S. Bank concludes, the mortgage's perfection date under New Hampshire law would precede the assessment of the federal tax liens, thereby priming the mortgage over the tax liens when the foreclosure deed was recorded and giving U.S. Bank unencumbered title to 9 Elm Street.

Like most jurisdictions, New Hampshire law permits the equitable reformation of a written instrument that, through mutual mistake of the parties, fails to correctly represent the parties' actual agreement.  Matter of Lemiuex, 157 N.H. 370, 373 (2008); Massicotte v. Matuzas, 143 N.H. 711, 713 (1999) (holding that conveyances of land are subject to this equitable principle); 7 Corbin on Contracts § 28.45 (2002 ed.).  It remains unclear, however, whether the date on which New Hampshire law considers an equitably reformed property interest to have been perfected falls on the reformation date or, instead, "relates back" to the property interest's original

recording.  Neither party has cited any case decided by the New
Hampshire Supreme Court that applies the relation-back principle
to an equitably reformed instrument, and this Court is otherwise
aware of no such authority.[6]

Nevertheless, this case does not require me to decide
whether New Hampshire law allows an equitably reformed mortgage
to relate back to its original recording date for purposes of
state-law priority analysis.[7]  The question before me is not

---

[6] New Hampshire does allow mortgagees to equitably restore
mistakenly discharged mortgages to their original position of
priority.  Anatole Caron, Inc. v. Manchester Fed. Sav. & Loan
Ass'n, 90 N.H. 560, 10 A.2d 668, 670-71 (1940).  Equitable
reinstatement of an already perfected mortgage, however, is a
different remedy from equitable reformation of a mortgage that
was never perfected.

[7] Other jurisdictions allow equitably reformed instruments to
relate back to the original execution date, but generally only
when relation back would not harm subsequent purchasers for
value without notice and others similarly situated.  E.g.,
Diocese of Bismarck Trust v. Ramada, Inc., 553 N.W.2d 760, 770
(N. Dak. 1996); Smith v. Pattishall, 176 So. 568, 572 (Fla.
1937); Hillside Co-op. Bank v. Cavanaugh, 122 N.E. 187, 189
(Mass. 1919); 66 Am. Jur. 2d Reformation of Instruments § 63.
Even if the New Hampshire Supreme Court allowed equitably
reformed instruments to relate back, therefore, it is unlikely
that the court would permit an equitably reformed instrument to
prime subsequent creditors who lacked both actual knowledge and
constructive notice.  That limitation would align with both the
law in other jurisdictions and the court's decision in Amoskeag
Bank, which holds that an attaching creditor's interest should
have priority over an earlier interest that failed to provide
constructive notice.  133 N.H. at 15.  Otherwise, a mortgagee

18

whether U.S. Bank would prevail against the government in a priority contest governed solely by New Hampshire law.  Instead, it is whether U.S. Bank's mortgage had become choate in the federal sense when the federal tax liens arose.  See McDermott, 507 U.S. at 449.  As I have explained, the error in the Bickford mortgage left the mortgage unperfected under New Hampshire law and, consequently, inchoate under federal law after the 2003 recording.  Even if New Hampshire law would allow U.S. Bank to equitably reform the mortgage and relate back to the 2003 recording date for purposes of priority analysis under state law, that remedy would not retroactively render U.S. Bank's mortgage choate for federal purposes.

As the Supreme Court has repeatedly explained, state liens become choate when they are "perfected in the sense that there is nothing more to be done to have a choate lien – when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."  New Britain, 347 U.S. at 84; see also McDermott, 507 U.S. at 449.  "[I]t is a matter

who records defectively and thereby fails to provide constructive notice could always circumvent Amoskeag Bank and prime a subsequent attaching creditor by seeking equitable reformation relating back to the original recording.  See id.

of federal law when [a state] lien has acquired sufficient
substance and has become so perfected as to defeat a later-
arising or later-filed federal tax lien." Pioneer, 374 U.S. at
88; see also United States v. Acri, 348 U.S. 211, 213 (1955)
("The state's characterization of its liens, while good for all
state purposes, does not necessarily bind [federal choateness
analysis]."). "Otherwise, a State could affect the standing of
federal liens, contrary to the established doctrine, simply by
causing an inchoate lien to attach at some arbitrary time even
before the amount of the tax, assessment, etc., is determined."
New Britain, 347 U.S. at 86 (emphasis added). Such a result,
the Court has said, would impair "the purpose of the federal tax
lien statute to insure prompt and certain collection of taxes
due the United States from tax delinquents." Sec. Trust, 340
U.S. at 51.

For that reason, the Supreme Court has held that a
relation-back provision under state law cannot retroactively
render a state lien choate at a time when it was otherwise
actually inchoate. In United States v. Security Trust & Savings
Bank of San Diego, a creditor sought to prime an attachment lien
over a competing federal tax lien. 340 U.S. 47, 48 (1950). The

creditor had attached the debtor's property before the
government assessed the tax liens against the debtor but did not
reduce the attachment to judgment until after the tax liens
arose.  Id.  Under applicable state law, the Court determined,
the creditor's attachment did not become enforceable until the
creditor obtained judgment.  Id. at 50.  Therefore, the Court
concluded, the creditor's judgment lien was inchoate when the
tax liens accrued.  Id.  Importantly, the Court rejected the
possibility that the creditor's judgment lien could relate back
to the attachment and thereby render the judgment lien choate as
of the attachment date, holding that "the doctrine of relation
back . . . [cannot] operate to destroy the realities of the
situation."  Id.; see also Acri, 348 U.S. at 213-14 (holding
that state relation-back doctrine did not render otherwise
inchoate state lien choate as against competing federal tax
lien).

Following Security Trust, the First Circuit has also held
that a relation-back provision that would otherwise control
under state law cannot retroactively render a property interest
choate that was otherwise inchoate when a competing federal tax

lien arose.[8]  In Rodriguez v. Escambron Development Corp., the
government assessed tax liens against a Puerto Rico landowner.
740 F.2d 92, 93-94 (1st Cir. 1984).  Before the assessment,
however, two other people had begun to adversely possess a
parcel of property owned by the landowner.  Id.  The possessors
eventually satisfied the statutory adverse possession period and
thereby obtained title to the property from the landowner.  Id.
The possessors sought title to the parcel unencumbered by the
tax liens because, they claimed, Puerto Rico law considers title
obtained through adverse possession to have passed when the
adverse possession period began, not concluded.  Id. at 94.
Therefore, the possessors argued, the tax liens assessed against
the landowner did not attach to the property because, under
Puerto Rico law, the landowner did not own the property when the
assessment was made.  Id. at 98.  The First Circuit dismissed
the possessors' argument as a "peculiar form of double-think."
Id.  "The Supreme Court," the court observed, "has rejected

---

[8] A number of other circuits also share this view.  See Blachy v.
Butcher, 221 F.3d 896, 905 (6th Cir. 2000); Hensley v. Harbin,
196 F.3d 613, 616 (6th Cir. 1999); Cent. Bank of Denver, 843
F.2d at 1307; Brown v. State of Md., No. 87-3660, 1988 WL
124793, at *1 (4th Cir. Nov. 10, 1988) (unpublished); Crocker
Nat'l Bank v. Trical Mfg. Co., 523 F.2d 1037, 1039-40 (9th Cir.
1975).

efforts to apply 'relation back' doctrine to subordinate a tax lien to a subsequently perfected state law lien." Id. (citing Sec. Trust, 340 U.S. at 50).  The court continued:

> If the [possessors'] interpretation of Puerto Rican law is correct, the legal fiction of retroactive prescription may give their ownership rights priority over liens created under state law.  But the priority of the tax lien is governed by federal law, and federal law makes no provision for a subordination by use of a legal fiction.

Id.  Because the possessors' interest was inchoate when the tax liens actually arose, the court concluded, it remained subordinate to the tax liens regardless of any relation-back principle recognized by Puerto Rico law.   Id.

Here, U.S. Bank seeks equitable reformation to correct the erroneous deed reference in the Bickford mortgage, which, as I have explained, prevented the mortgage from becoming perfected under New Hampshire law when it was recorded in 2003.  Like the creditor in Security Trust and the adverse possessors in Rodriguez, therefore, U.S. Bank invokes a state-law relation-back rule to retroactively perfect, and thereby render choate, a property interest that was inchoate when the federal tax liens arose.  Even if such a rule exists in New Hampshire, however, Security Trust and Rodriguez – both of which bind this Court –

bar such relief.  See Sec. Trust, 340 U.S. at 50; Rodriguez, 740 F.2d at 98.  U.S. Bank's mortgage was inchoate when the government actually assessed the tax liens, and any provision of New Hampshire law enabling U.S. Bank to retroactively perfect its mortgage has no bearing on this federal choateness determination.

To support its position, U.S. Bank relies on a different First Circuit decision: Progressive Consumers Federal Credit Union v. United States.  79 F.3d 1228 (1st Cir. 1996). Progressive, however, is not to the contrary.  There, a homeowner granted a mortgage to a bank before the government imposed multiple tax liens on the homeowner's property.  Id. at 1236.  The bank and the homeowner then refinanced the mortgage, recording a new mortgage that inadvertently discharged the original mortgage.  Id.  Because applicable state law permitted a mistakenly discharged mortgage to be restored to its initial position of priority, the court held, the mortgage retained its original priority over the intervening federal tax liens.  Id. at 1237.

In Progressive, however, the "parties [did] not dispute that [the original] mortgage lien was choate as of its original

24

recording." Id. at 1238.  Instead, the court held that a state
lien that had become choate before competing federal tax liens
arose did not lose its priority over the tax liens because of a
mistaken discharge that occurred after the tax liens had been
assessed.  See id.  U.S. Bank's mortgage, by contrast, was
improperly recorded and consequently remained inchoate when the
federal tax liens arose.  Progressive, therefore, does not apply
here.  In fact, the Progressive court emphasized that "[f]ederal
law remains intact to determine both the choateness of the state
created lien and its order of priority in relation to any
competing federal liens."  Id. at 1237.  And, as the First
Circuit held in Rodriguez, federal choateness doctrine does not
permit a state's relation-back rule to retroactively render a
security interest choate at a point when it was actually
inchoate.  740 F.2d at 98.  Because Progressive does not address
a choateness problem of the type that exists here, therefore, it
provides no support for U.S. Bank's equitable reformation
argument.[9]

---

[9] For much the same reason, Judge Laplante's decision in Green
Tree Servicing, LLC v. United States is also not to the
contrary.  783 F. Supp. 2d 243 (D.N.H. 2011).  Following
Progressive, Green Tree held that an otherwise choate mortgage
that is mistakenly discharged does not lose its priority over a

Because the 2003 recording was defective, it remained unperfected under New Hampshire law, and therefore inchoate under federal law, at the actual time when the federal tax liens arose.  Regardless of whether a relation-back rule under New Hampshire law might give the mortgage priority in a state law contest, it cannot retroactively render the mortgage choate as of the original recording for federal purposes.  See, e.g., Kleinbank v. Haugland, Civil No. 09-3065 (DWF/LIB), 2010 WL 5463796, at *5 (D. Minn. Dec. 29, 2010) (declining to retroactively reform an ambiguous mortgage to prime it over subsequent tax liens); Samco Mortg. Corp. v. Keehn, 721 F. Supp. 1209, 1211-12 (D. Wyo. 1989) (declining to prime already reformed mortgage over subsequent tax liens).  Thus, U.S. Bank's equitable reformation argument fails.

---

competing federal tax lien.  See id. at 251-52.  But Green Tree recognizes, as I have explained, that the equitable reinstatement of a mistakenly discharged choate lien is a different remedy than the equitable restoration and retroactive perfection of a lien that was not choate when a competing federal tax lien was assessed.  See id. at 251 ("Equitable reinstatement . . . does not 'perfect' an otherwise unperfected mortgage.").

## IV.   **CONCLUSION**

For these reasons, U.S. Bank's title to 9 Elm Street remains encumbered by the federal tax liens assessed against Bickford in 2003, 2004, and 2007.  I therefore grant the government's motion for summary judgment (Doc. No. 29).

The government does not contest U.S. Bank's request for equitable reformation except insofar as U.S. Bank seeks to reform the Bickford mortgage to give it priority over the tax liens.  Accordingly, the bank's request for summary judgment (Doc. No. 33) is granted to the extent that it is consistent with this Memorandum and Order and is otherwise denied.  U.S. Bank shall submit a proposed order addressing the reformation issue within 14 days.

SO ORDERED.


                                   /s/Paul Barbadoro
                                   Paul Barbadoro
                                   United States District Judge

March 31, 2015

cc:   Austin L. Furman, Esq.
      William Philpot, Jr., Esq.

27